**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CORPORATE AVIATION CONCEPTS, INC. and CFS AIR LLC, | : | |
|     Plaintiffs, | : | CIVIL ACTION |
| | : | |
|     v. | : | No. 03-3020 |
| | : | |
| MULTI-SERVICE AVIATION CORPORATION, | : | |
|     Defendant and Third-Party Plaintiff, | : | |
| | : | |
|     v. | : | |
| | : | |
| GENERAL ELECTRIC CAPITAL CORPORATION, | : | |
|     Third-Party Defendant. | : | |

**<u>MEMORANDUM & ORDER</u>**

YOHN, J.                                                                                          July \_\_\_\_, 2005

       This lawsuit arises out of a dispute over the validity of a series of liens held by defendant and third-party plaintiff Multi-Service Aviation Corporation ("MSC") against commercial aircraft.  Third-party defendant General Electric Capital Corporation ("GEC") also holds security interests in these same aircraft.  Presently before the court is MSC's motion to dismiss GEC's third-party counterclaim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  MSC contends that the counterclaim is not ripe for adjudication and alternatively, that GEC's unjust enrichment claims should be dismissed pursuant to the so-called voluntary payment doctrine.  For the reasons set forth below, I will grant the motion to dismiss GEC's unjust enrichment claims, but deny MSC's ripeness contentions.

I.      BACKGROUND[1, 2]

MSC is a credit card processing company that issues corporate credit cards to businesses in the aviation industry for purchase of aviation fuel and other aviation-related services. (Third-Party Countercl. at ¶ 2.) To secure debt owed by credit card customers, MSC regularly records liens against aircraft for aviation fuel or services that were paid for with MSC-issued credit cards. (*Id*. at ¶ 4.)

To effectively attach to an aircraft, a lien claim must be recorded with the Federal Aviation Administration ("FAA"). (*Id*. at ¶ 5.) The FAA will only record liens that are recordable in the state where the work or service for which the lien is sought was performed. (*Id*. at ¶ 6.) Thirty-three states maintain recording statutes that provide that liens may attach to aircraft for unpaid materials or services ("recording states"). (*Id*. at ¶ 8.) However, in many recording states, liens may not attach against aircraft for consumable materials, such as aviation fuel.[3] (Third-party Countercl. at ¶ 31.) Further, in those recording states where liens may attach

---

[1]The foregoing factual account accepts all allegations in GEC's third-party counterclaim as true. *See N.E. Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3d Cir. 2001); *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).

[2]Because I described the underlying facts in this case in three previous opinions, I will only provide a brief overview of the factual background. *See Corporate Aviation Concepts, Inc. & CFS Air LLC v. Multi-Service Aviation Corp.*, No. 03-3020, 2005 U.S. Dist. LEXIS 3495 (E.D. Pa. Mar. 8, 2005) (granting CFS and GEC's motions to dismiss in part); *Corporate Aviation Concepts, Inc. & CFS Air LLC v. Multi-Service Aviation Corp.*, No. 03-3020; 2004 U.S. Dist LEXIS 17154 (E.D. Pa. Aug. 24, 2004) (granting CFS and GEC's motions to dismiss); *Corporate Aviation Concepts, Inc & CFS Air LLC v. Multi-Service Aviation Corp.*, No. 03-3020, 2003 U.S. Dist. LEXIS 21108 (E.D. Pa. Nov. 13, 2003) (denying MSC's motion to dismiss or transfer).

[3]In these states, liens may only attach against aircraft for non-consumable materials, such as repair parts. (Third-party Countercl. at ¶ 31.)

to aircraft for unpaid fuel, the statutes only provide for the recording of lien claims for fuel by vendors who provide it, not other creditors. (*Id*. at ¶ 48.)

According to GEC, to avoid the FAA's state-recording requirements, MSC regularly records second lien claims against aircraft in recording states for unpaid fuel sold in non-recording states. (*Id*. at ¶ 10.) In addition, MSC allegedly records liens for unpaid fuel in states where the recording statutes do not permit lien claims for consumables such as fuel. (*Id*. at ¶ 32.) Further, GEC alleges that MSC regularly records lien claims for unpaid fuel without obtaining an assignment of lien rights from the vendors who fueled the aircraft. (*Id*. at ¶¶ 49–56.)

GEC is among the world's largest financiers of aircraft. (Third-Party Countercl. at ¶ 37.) It contends that it has held and currently holds first-lien security interests in various aircraft whose titles have been clouded due to MSC's allegedly improper recording practices. (*Id*. at ¶ 17.) It alleges that in the past, it has paid off these allegedly invalid lien claims to facilitate transactions involving these aircraft.[4] (*Id*. at ¶23.)

The only example that GEC provides of aircraft that have been affected by MSC's recording practices are the aircraft that to this point have been the focus of the litigation. According to GEC, these aircraft are owned by plaintiff Corporate Aviation Concepts ("CAC").[5] GEC has not alleged that it ever had any financial interest in these aircraft. CAC fueled its

---

[4]GEC has not explained how these "transactions" affect its security interests in the aircraft. GEC does not purport to own the aircraft and presumably it will recover its security interests regardless of whether or not the transactions are completed. Nonetheless, because GEC has allegedly paid off MSC's lien claims to ensure that the transactions were not disrupted, for the purposes of this motion, I will assume that these transactions help GEC recover the full value of its security interests in the aircraft.

[5]In the original complaint, plaintiffs CAC and CFS Air LLC allege that CFS owns the aircraft and leased them to CAC. (Compl. at ¶ 6–7.)

aircraft in Pennsylvania with an MSC-issued credit card. (*Id.*) When CAC defaulted on its credit card payments, MSC recorded lien claims against the aircraft in Kansas, which is a recording state, instead of Pennsylvania, which does not recognize lien claims for materials such as fuel. (*Id.*) These claims were subsequently recorded by the FAA.

On May 8, 2003, CAC and CFS Air LLC ("CFS"), a wholly owned subsidiary of GEC, initiated this suit against MSC. They sought a declaratory judgment that the liens held by MSC on CAC's aircraft were invalid. On December 5, 2003, CAC and CFS moved for summary judgment. They argued that because the fuel was purchased in Pennsylvania, and because Pennsylvania does not recognize lien claims for unpaid fuel, MSC's liens were invalid. Next, in January 2004, before the court could decide the motion, the parties resolved the dispute and entered into a "Mutual Release Agreement," whereby MSC agreed to remove the liens. GEC contends that MSC voluntarily released its lien claims to avoid judicial scrutiny of its recording practices. (Third-party Countercl. at ¶ 20.)

In the meantime, MSC filed a counterclaim against CAC and CFS, and a third-party complaint against GEC. MSC charged that GEC conspired with CAC and CFS to prevent MSC from enforcing its liens. Next, on April 12, 2005, GEC filed the instant third-party counterclaim against MSC. GEC seeks a declaratory judgment voiding all of MSC's lien claims for unpaid fuel against aircraft in which GEC has an interest (1) that arose in non-recording states, (2) that arose in states where lien claims for consumable materials are not recognized, (3) and where MSC failed to obtain an assignment of lien rights from the vendors who fueled the airplanes. (*Id.* at ¶¶ 24, 31–41, 48–61.) GEC also seeks an injunction prohibiting MSC from engaging in its allegedly improper recording practices. (*Id.* at ¶¶ 25–28, 42–45, 62–65.) Further, GEC seeks

damages for unjust enrichment and violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat.. §§ 201-1 *et seq*.  (*Id*. at ¶¶ 29–30, 46–47, 66–67, 68–72.)

On May 2, 2005, MSC filed the instant motion to dismiss GEC's third-party counterclaim, which has been fully briefed.

## II.    DISCUSSION

### A.    Ripeness

MSC challenges the court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) by arguing that GEC's third-party counterclaim is not ripe for judicial review. When ruling on a "facial" attack[6] to subject matter jurisdiction under Rule 12(b)(1), courts must "treat the allegations of the complaint as true and afford the plaintiff the favorable inferences to be drawn from the complaint."  *N.E. Hub Partners, L.P. v. CNG Transmission Corp*., 239 F.3d 333, 341 (3d Cir. 2001).

Article III of the United States Constitution restricts the scope of federal courts' jurisdiction to "cases" and "controversies."  U.S. Const. art. III, § 2, cl. 1.  Among the doctrines specifically developed to ensure that federal courts comply with Article III's "case" and "controversy" requirement is the ripeness doctrine.  *Armstrong World Indus., Inc. v. Adams*, 961

---

[6]A party makes a "facial" challenge to subject matter jurisdiction, as opposed to a "factual" challenge, when it attacks the complaint on its face.  *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1976).  A "factual" attack challenges a defect that may exist despite the formal sufficiency of the allegations in the complaint.  *Id*.  Courts need not accept the plaintiff's allegations as true when reviewing a "factual" challenge.  *Id*.  Here, MSC has made a "facial" challenge because it contends that GEC's allegations on their face are not ripe for adjudication and thus fail to properly invoke the court's subject matter jurisdiction.

F.2d 405, 411 (3d Cir. 1992).  The ripeness doctrine prevents federal courts, "through avoidance

of premature adjudication, from entangling themselves in abstract disagreements . . . . " *Abbot*

*Labs. v. Gardner*, 387 U.S. 136, 148 (1967), overruled on other grounds by *Califano v. Sanders*,

430 U.S. 99, 105 (1977).

The Supreme Court has established two fundamental considerations to determine whether

a suit is ripe for adjudication: (1) "the fitness of the issues for judicial decision" and (2) "the

hardship to the parties of withholding court consideration."[7]  *Id.* at 149.  Under the "fitness"

inquiry, courts look to "whether the issue is purely legal (as against factual), the degree to which

the challenged action is final, whether the claim involves uncertain and contingent events that

may not occur as anticipated or at all, the extent to which further factual development would aid

decision, and whether the parties to the action are sufficiently adverse."  *NE Hub Partners*, 239

F.3d at 342 n.8 (citation omitted).  Under the "hardship" consideration, courts evaluate "whether

a plaintiff faces a direct and immediate dilemma, such that lack of review will put it to costly

choices."  *Id.*

      1.    *Fitness*

MSC contends that the parties' interests are not sufficiently adverse because absent future

contingent events, GEC will suffer no harm as a result of MSC's liens.  MSC argues that GEC's

security interests will not be affected by MSC's liens unless GEC or MSC seeks to enforce its

---

[7]In GEC's memorandum of law, it applies the three-factor ripeness test set forth in
*StepSaver Data Sys., Inc. v. WYSE Tech.*, 912 F.2d 643, 647 (3d Cir. 1990).  I need not consider
this test separately because the Third Circuit has made clear that the *StepSaver* test merely "alters
the heading under which various factors are grouped."  *Phila. Fed'n of Teachers v. Ridge*, 150
F.3d 319, 323 n.4 (3d Cir. 1998).  Moreover, "since *StepSaver* [the Third Circuit has] employed
both tests."  *Id*. (citations omitted).

lien claims.  (MSC's Br. in Supp. of Mot. to Dismiss at 6, 8.)  This argument ignores other obvious adverse consequences of MSC's lien claims.  According to the third-party counterclaim, MSC's lien claims often frustrate potential transactions involving the aircrafts.  Hence, GEC's desire to recover its security interests upon the sale of the aircraft directly conflicts with MSC's lien claims.  Further, the Declaratory Judgment Act permits litigants to determine the validity of a security interest, such as MSC's lien claims, "before the dispute grows into a contract violation or a foreclosure proceeding." *Doody v. Ameriquest Mortgage Co.*, 242 F.3d 286, 288 (5th Cir. 2001) (concluding that a dispute over the validity of a mortgage was ripe for adjudication).  For these reasons, GEC need not wait until MSC seeks to enforce its lien claims to challenge the validity of these claims.

MSC also contends that the dispute is unfit for judicial review because GEC has failed to identify any specific aircraft that GEC maintains an interest in whose title has been affected by MSC's lien claims.  (MSC's Br. in Supp. of Mot. to Dismiss at 7.)  In its third-party counterclaim, GEC neglected to allege that it held a security interest in the aircraft owned by CAC, which are the only specific aircraft described in the third-party counterclaim.  Clearly, further factual development will be necessary before the court can render a decision.  For example, before the court can determine the validity of MSC's lien claims, GEC must set forth specific facts describing the individual transactions that give rise to the lien claims, and the states where the liens arose and were recorded.

Nonetheless, this not the type of factual deficiency that will make a case unfit for judicial review.  Ordinarily, a claim is unfit due to insufficient factual development when a plaintiff cannot allege facts with sufficient specificity because no concrete factual setting exists.  For

instance, in *Socialist Labor Party v. Gilligan*, 406 U.S. 583 (1972), the Supreme Court

considered a political party's challenge to a state law requiring political candidates to sign an

affidavit that they would not attempt to overthrow the government by force.  The Court rejected

the claim on ripeness grounds because plaintiffs had never refused to sign the oath in the past and

there was no suggestion that they would refuse to sign the oath in the future.  *Id*. at 586–88.  The

Court reasoned that the dispute was unfit for judicial review because the plaintiff's case had "not

given any particularity to the effect on them of [the] affidavit requirement."  *Id*. at 588; *see also*

*Phila. Fed'n of Teachers v. Ridge*, 150 F.3d 319, 324 (3d Cir. 1998) (concluding that a challenge

to Pennsylvania's procedures governing disability determinations for worker's compensation was

unripe where none of the plaintiffs' disability statuses had been adjusted under the law because a

review of the claim "must be done in the context of a specific factual setting.")  Here, although

GEC's allegations lack specificity, it has alleged a concrete factual setting and it should be able

to describe MSC's allegedly wrongful acts with greater specificity without the occurrence of

some future event.  Further, GEC's allegations satisfy the liberal notice pleading standard of

Federal Rule of Civil Procedure 8(a), which only requires that a complaint include a "short and

plain statement" showing a right to relief, "not a detailed recitation of the proof that will in the

end establish such a right."[8]  *Pryor v. NCAA*, 288 F.3d 548, 564 (3d Cir. 2002).  For these

reasons, GEC's third-party counterclaim is fit for judicial review.

   2. *Hardship*

  MSC claims that the GEC will suffer no hardship if the court chooses to withhold

---

   [8]After discovery, if MSC still believes that GEC cannot support its claims with facts of
sufficient specificity, it may raise this argument in a motion for summary judgment.

judgment because GEC's allegations fail to show that it "faces a direct and immediate dilemma."
(MSC's Br. in Supp. of Mot. to Dismiss at 8–9.)  MSC argues that GEC faces no "immediate
dilemma" because MSC will release the liens claims and clear the aircraft's titles when the
owners of the planes pay off their credit card debt to MSC.[9]  This argument ignores the
fundamental premise of GEC's counterclaim.  GEC contends that MSC's lien claims are bogus
and need not be paid off at all.   In its third-party counterclaim, GEC alleges that it has been
forced to satisfy MSC's invalid lien claims to remove clouds on title of aircraft to ensure that
transactions involving those planes are not disrupted.  (Third-party Countercl. at ¶23.)  Hence,
without judicial review, GEC must choose to either pay off MSC's allegedly bogus liens or
permit the liens to cloud the aircraft's titles and disrupt future transactions.  Clearly, GEC faces
the type of "direct and immediate dilemma" that necessitates judicial review.  *See, e.g., Abbot
Labs*, 387 U.S. at 152–53 (concluding that the plaintiff was entitled to a judicial determination as
to the validity of certain regulations that forced the plaintiff to chose between complying with
potentially suspect regulations and incurring substantial costs, or refusing to comply and risking
serious criminal and civil sanctions).  Because GEC will continue to experience hardship if the
court declines to determine the validity of MSC's lien claims, GEC's suit is ripe for judicial
review.

      B.    <u>GEC's unjust enrichment claims and the  voluntary payment doctrine</u>

      MSC also seeks to have GEC's unjust enrichment claims dismissed under Federal Rule of

---

      [9]MSC also contends that GEC faces no "hardship" because MSC will release any invalid
lien claims upon GEC's request.  (MSC's Reply Mem. of Law in Supp. of Mot. to Dismiss at 5.)
However, if the claims are invalid, GEC should not be expected to individually request that each
lien claim be released and hope that MSC will comply.

Civil Procedure 12(b)(6).  In ruling on a motion to dismiss under Rule 12(b)(6), courts must

accept as true all well-pled allegations of fact in the complaint, and any reasonable inferences

that may be drawn therefrom, to determine whether "under any reasonable reading of the

pleadings, the plaintiff may be entitled to relief."  *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996);

*Colburn v. Upper Darby Township*, 838 F.2d 663, 665-66 (3d Cir. 1988) (citations omitted).

Although courts must construe the complaint in the light most favorable to the plaintiff, they

need not "accept as true unsupported conclusions and unwarranted inferences."  *Schuylkill*

*Energy Res. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997).  Courts will grant a

motion to dismiss "only if it is clear that no relief could be granted under any set of facts that

could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73

(1984). "The issue is not whether [the claimant] will ultimately prevail but whether the claimant

is entitled to offer evidence to support the claim."  *In re Burlington Coat Factory Sec. Litig.*, 114

F.3d 1410, 1420 (3d Cir. 1997).

   GEC's unjust enrichment claims are based on its allegation that it was forced to satisfy

MSC's allegedly invalid lien claims to facilitate transactions involving aircraft whose titles were

burdened by the liens.  (*Id*. at ¶23.)  MSC asserts that because GEC chose to pay off the liens

instead of challenging their validity while they were still in place, its unjust enrichment claims

should be dismissed pursuant to Pennsylvania's[10] voluntary payment doctrine.  (MSC's Reply

Mem. of Law in Supp. of Mot. to Dismiss at 10.)  Under the voluntary payment doctrine,

"[w]here . . .  one voluntarily and without fraud or duress pays money to another with full

---

[10]The parties agree that Pennsylvania law applies here.  (*See* MSC's Br. in Supp. of Mot.
to Dismiss at 11; GEC's Resp. to MSC's Mot. to Dismiss at 16.)

knowledge of the facts, the money paid cannot be recovered." *Acme Mkts., Inc. v. Valley View Shopping Ctr.*, *Inc.*, 493 A.2d 736, 737 (Pa. Super. Ct. 1985) (citing *Ochiuto v. Prudential Ins. Co. of Am.*, 52 A.2d 228, 230 (Pa. 1947)).

GEC contends that the voluntary payment rule is inapposite here because MSC obtained GEC's payments through duress.[11] "The hallmark of duress . . . is that the victim has no feasible legal remedy." *Oxxford Clothes XX, Inc., v. Expeditors Int'l of Wash., Inc.*, 127 F.3d 574, 579 (7th Cir. 1997) (citations omitted); *see also Tri-State Roofing Co. v. Simon*, 142 A.2d 333, 335 (Pa. Super. Ct. 1958) ("[A] threat of serious financial loss is sufficient to constitute duress and ground for relief where an ordinary suit might not be an adequate remedy.") Here, GEC had an adequate legal remedy at the time it paid off MSC's lien claims because it could have filed a lawsuit similar to the instant action seeking a declaratory judgment that the lien claims at issue were invalid. The Seventh Circuit's application of the duress doctrine in *Oxford Clothes XX*, 127 F.3d 574, is particularly instructive. In *Oxford*, the defendant placed frivolous lien claims on the plaintiff's property to collect a debt owed by the plaintiff's predecessor. 127 F.2d at 576. The

---

[11]GEC also contends that MSC's reliance on the voluntary payment doctrine is misplaced because the doctrine only precludes recovery of money that was paid under mistake of law. This argument misconstrues the relevant case law. (GEC's Resp. to MSC's Mot. to Dismiss at 16.) In *Ochiuto v. Prudential Ins. Co.*, 52 A.2d 228, 230 (Pa. 1947), the leading Pennsylvania case on the voluntary payment doctrine, on which both parties rely, the Pennsylvania Supreme Court held that where there was no allegation of either mistake of law or mistake of fact, "one who voluntarily pays money with full knowledge of the facts, without any fraud having been practiced upon him, cannot recover it back." The court proceeded to make clear that even if the money had been paid under mistake of law, it could not be recovered. *Id.* Thus, contrary to GEC's contentions, an allegation of mistake of law is not required to invoke the voluntary payment doctrine. If this were the case, a party such as GEC, which voluntarily paid off a debt arising under an obligation that it knew was invalid could recover its payment, whereas a similar party could not recover if it mistakenly paid off the debt under mistake of law.

plaintiff sought a preliminary injunction, which the district court denied. *Id*. at 577. Next,

instead of appealing the judgment, the plaintiff paid the defendant $75,000 to release the liens.

*Id*. Later, the plaintiff filed suit to recover the $75,000 under a duress theory. *Id*. The court

rejected the duress claim, reasoning that "[t]he fatal flaw in this ground of liability is . . . [the

plaintiff's] complete legal remedy. [The plaintiff] didn't have to pay [the defendant] a cent. All

it had to do, having failed to persuade the district court that this was indeed extortion, was to

appeal to [the Seventh Circuit], and seek an injunction pending the decision of the appeal . . . ."

*Id*. at 579. Here, like *Oxford*, if MSC's liens were truly bogus, GEC had no obligation to "pay

[MSC] a cent." However, unlike the plaintiff in *Oxford*, GEC did not even make one attempt at

judicial resolution before paying off MSC's lien claims.

GEC argues that it was forced to pay MSC's lien claims because filing multiple lawsuits

to void each lien would be impractical given the number of lien claims and the depressed market

for aircraft. (GEC's Resp. to MSC's Mot. to Dismiss 17–18.) This may be true, but GEC had a

feasible alternative remedy to filing multiple lawsuits. It could have filed a comprehensive suit,

identical to the one at hand, seeking a declaratory judgment that all of MSC's lien claims were

invalid.[12]

GEC also relies on the Pennsylvania Superior Court's decision in *Litten v. Jonathan

Logan, Inc*., 286 A.2d 913 (Pa. Super. Ct. 1971), to show that its payments to MSC were made

---

[12]GEC also argues that clearing the aircraft's titles through litigation was impractical because the depressed market for aircraft left the aircraft's owners with a very short window to provide potential buyers with marketable title. (GEC's Resp. to MSC's Mot. to Dismiss at 18.) Nonetheless, even though GEC may have been forced to forgo one sale to clear the aircraft's titles through judicial review, it could have facilitated all future sales though one comprehensive suit. Additionally, there is no evidence that GEC's financial future depended on one sale.

under duress.  In *Litten,* the plaintiffs, who were facing bankruptcy, entered into a written

contract with the defendant after the defendant refused to comply with the terms of an earlier oral

agreement, which called for the defendant to satisfy the plaintiffs' debts.  *Id.* at 916.  The court

determined that the agreement was executed under duress because the defendant's actions put the

plaintiffs in such "an inextricable financial crisis" that the plaintiffs' only recourse, besides

declaring bankruptcy, was to accede to the terms of the contract.  *Id.* at 917.  GEC's reliance on

this case is misplaced.  First, the Pennsylvania Supreme Court has explicitly held that "*Litten* . . .

does not represent controlling authority" because it was decided under New York law.

*Degenhardt v. Dillon Co.*, 669 A.2d 946, 952 n.5 (Pa. 1996); *see also Peoples Mortgage Co. v.*

*Fed. Nat'l Mortgage Ass'n*, 856 F. Supp. 910, 920 (E.D. Pa. 1994) ("Given the *Litten* majority's

cursory treatment of the relationship between New York and Pennsylvania law, and its failure to

distinguish or even discuss [the leading Pennsylvania Supreme Court decision on duress], we do

not find *Litten* to be persuasive authority.")  Additionally, the facts that compelled the *Litten*

court to find duress are not present here.  GEC has not alleged that it faced any serious financial

difficulty at the time it paid off MSC's liens.  Unlike the plaintiffs in *Litten*, GEC was not forced

to pay off the liens to avert bankruptcy.  Further, apart from the liens themselves, there is no

allegation that MSC itself contributed to GEC's "economic crisis," which, according to GEC,

resulted in part from the depressed market for aircraft.   Finally, as I described above, GEC had

an adequate legal remedy because it could have easily sought a declaratory judgment that the

liens were invalid.  For these reasons, GEC's allegations fail to show that it was under duress

when it paid off MSC's liens and thus GEC's past payments fall under the voluntary payment

doctrine.  Hence, I will grant MSC's motion to dismiss with respect to GEC's unjust enrichment

13

claims.[13]


**IV.     CONCLUSION**

For the reasons explained above, I will dismiss GEC's three unjust enrichment claims and

deny the balance of MSC's motion to dismiss.   An appropriate order follows.

---

[13]Because I will dismiss GEC's unjust enrichment claims under the  voluntary payment
doctrine, I need not discuss MSC's alternative argument under the doctrine of accord and
satisfaction.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CORPORATE AVIATION CONCEPTS, INC. and CFS AIR LLC, | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 03-3020 |
| | : | |
| MULTI-SERVICE AVIATION CORPORATION, | : | |
| Defendant and Third-Party Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| GENERAL ELECTRIC CAPITAL CORPORATION, | : | |
| Third-Party Defendant. | : | |

## <u>ORDER</u>

And now, this _____ day of July, 2005, upon consideration of Multi-Service Aviation

Corporation's motion to dismiss General Electric Capital Corporation's third-party counterclaim

(Docs. No. 42), General Electric Capital Corporation's response, and Multi-Service Aviation

Corporation's reply thereto, it is hereby ORDERED that Multi-Service Aviation Corporation's

motion to dismiss is GRANTED IN PART and DENIED IN PART as follows:

1.　　　Counts III, VI, and IX of General Electric Capital Corporation's third-party

　　　　counterclaim are DISMISSED.

2.　　　The balance of the motion is DENIED.

_____

William H. Yohn. Jr., J.

.